**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Sabira Taher | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | Case. No. |
| v | ) | |
| | ) | |
| | ) | The honorable Judge: |
| Fleishman-Hillard, Inc. | ) | |
| | ) | JURY TRIAL REQUESTED |
| | ) | |
| Defendant | ) | |

## COMPLAINT

Sabira Tahera, ("Plaintiff"), by and through her attorney, Ryan Scott Nalley, in support of her Complaint against Fleishman-Hillard, Inc., ("Defendant"), states the following.

## JURISDICTION AND VENUE

1. This Court has federal question jurisdiction over the instant matter pursuant to 28 U.S.C. § 1331, which states that federal district courts have primary jurisdiction over actions that arise under the laws of the United States. Plaintiff alleges various violations of Title I of the Americans with Disabilities Act, 42 U.S.C. § 12112 *et. seq.*

2. Further, this Court has jurisdiction over said claims as Plaintiff has exhausted his administrative remedies. Further, Plaintiff has received and that has received a Right to Sue Letter days after its March 10, 2014 mailing date, and a letter.[1] (See right to sue letter attached hereto as "exbibit 1").

3. Venue is proper as all actions and events giving rise to this action occurred within the

---

[1] As of the date of the instant filing it has been 90 days since the issuance and mailing of the right to sue letter, however, the date from which the 90 day period begins to run is the date on which Plaintiff actually received the letter—thus even if it were a day or two past the 90 day period, the instant complaint would nevertheless be timely. *Threadgill v. Moore, U.S.A., Inc.,* 269 F.3d 848, 849-50 (7th Cir. 2001) (noting that actual receipt of right-to-sue notice by claimant or her attorney starts 90-day period) *Demata v Rolling Packaging Company, Inc.* No. 10-1596, 10-11 (7th Cir. 2011)

Northern District of Illinois.

<u>**FACTS COMMON TO ALL COUNTS**</u>

4. Plaintiff re-alleges and incorporates herein paragraphs 1 through 3 as stated above and alleges further:

5. That in or around April of 2012, Plaintiff, as well as her husband and child left their home in New York so that Plaintiff could accept a full time position with Defendant's Public Relations Company which is based in St. Louis Missouri, but has an office in Chicago, Illinois and other cities around the world.

6. On or around January 31, 2013, Plaintiff had an accident which caused her to suffer a neck and spine injury, whiplash, concussion, and subsequently from post concussive syndrome.

7. The latter had a substantial impact on Plaintiff's major life activities, including but not limited to, concentrating for significant periods of time, sitting for long periods of time, looking at computer screens without breaks or or a dimmed-lit screen; limits on the amount of weight she could lift to that of less than the weight of her two year old child, and driving.

8. That following the accident on January 31, 2013 Plaintiff suffered from a number of post concussive symptoms, primarily migraine headaches, nausea, and neck pain, all of which were exacerbated by anxiety.

9. With the possible exception for the period of time following her termination, said symptoms were most pronounced immediately after the accident during the first week of February of the year 2013 when Plaintiff was unable to perform her work, despite that Defendants had her, as well as other similarly situated non-disabled employees with the same position, telecommuting from home to work, she was still unable to function, and thus was required to take leave.

10. That Defendant's leave policy allows employee's within his or her first year of
employment to take at least 8 weeks of partially paid leave, and allows 12 weeks for all
employees that have worked 5 or more years with the company.

11. However, in addition to 8 paid weeks, there is a one week waiting period prior to payments
being made, thus it is actually a 9 week leave period.

12. Despite any leave time periods pursuant to the employment policy, Plaintiff was
specifically told by manager Maxine Weber of Defendant's Chicago based office, that she
should not worry about the amount of time needed off because the company did not
terminate employees due to illness or disability.

13. In fact Plaintiff was told this by other officials throughout the entire time period of her
leave—February 6, 2013 through April 9, 2013.

14. As of March 10, 2013, Plaintiff was a qualified individual with a disability as she was able
to perform the essential functions of her employment able with or without reasonable a
accommodation.  42 U.S.C. § 12111 (8), 29 C.F.R. § 1630.2(m).

15. As of March 15, 2013, Plaintiff had put Defendant on notice that she wished to return to
work and that she was able to do so with reasonable accommodations accommodation.

16. Plaintiff was actually encouraged by Defendant to remain on leave in order to fully recover
when she first proposed that she return to work with a reasonable accommodation.

17. Though Plaintiff did not ask for a specific accommodation, she did request that she be able
to come back to work with a reasonable accommodations.

18. Instead of engaging with Plaintiff in an interactive process, Defendants merely had her sign
a form which allowed them to inquire with one of her physicians on March 25, 2013, as to

the nature of her disabilities and the appropriate accommodations that might allow Plaintiff to return to work.

19. On March 28, 2013 Plaintiff's neurologist specifically submitted a request on Plaintiff's behalf that they consult with her regarding potential reasonable accommodations which would allow her to return to work; and he also opined that he "would not be surprised if" Plaintiff's condition prevented her from performing the essential functions of her job.

20. On April 3, 2013, Plaintiff updated Defendant with her physician and physical therapist specific request that Plaintiff be able to return to work with an accommodation in the form of a reduced schedule or allow her to work from home—which she was certainly capable of doing after almost seven weeks of leave time and treatment.

21. At no time did Defendant ever engage Plaintiff (nor upon information and belief did they ever contact her doctors for any clarification or insight) in any type of interaction for purposes of determining what reasonable accommodation would allow her to return back to her work duties—or whether she could resume them from home, as some similarly situated non disabled employees in the same position as Plaintiff were permitted to do; and that Defendants otherwise wholly refused to engage in any type of interactive process with Plaintiff.

22. At no time did Defendants ever offer or provide a reasonable accommodation to Plaintiff, (though she was initially working from home at the time immediately after the accident, this was not intended to be, nor had Plaintiff requested that it be a reasonable accommodation, alternatively, if it were deemed to be intended as an accommodation, it was clearly not an effective or reasonable accommodation at that time, as it was not sufficient to allow Plaintiff to continue her work.)

23. Plaintiff, at all times material, was regarded by Defendant as having a disability, and she had a record of having a disability.

24. Defendants terminated Plaintiff's employment without warning on April 9, 2013, just 4 days after she supplied Defendants with information regarding her physician and physical therapist's opinions in connection with her request for a reasonable accommodation.

25. That during the conversation on April 9, 2013 in which Defendant informed Plaintiff her employment was being terminated because her leave had effected their business, Plaintiff attempted again to remind Defendants that she was able and willing to return to work with a reasonable accommodation, however, Defendants merely stated that the issue was not up for discussion.

26. If there existed any ambiguity or confusion on Defendant's part as to what her and/or her doctor's opinions were regarding her suitability to return to work was, such confusion was a direct result of Defendant's willful failure to engage in a good faith interactive process with Plaintiff regarding available potential accommodations.

27. Defendants violated the American's With Disabilities Act through the following:

　　i.　Willfully failing to engage in an interactive process with Plaintiff, which resulted in a failure to accommodate; willfully failing to accommodate Plaintiff with any one of the numerous available accommodations including but not limited to, reduced schedule, telecommuting and/working from home at full time or part time, additional leave time, etc,;

　　ii.　Treating Plaintiff disparately in comparison to similarly situated non-disabled employees and/or employees who have not requested for

accommodations by terminating Plaintiff's employment instead of providing her with certain available accommodations which were being made available to nondisabled employees, i.e. 12 week leave of absence (or at least 9 weeks), working from home—neither of which were granted to Plaintiff when doctors requested it as an accommodation.

iii. Retaliating and/or interfering with Plaintiff's exercise of her rights under said Act when instead of helping Plaintiff return to work with a reasonable accommodation, Defendant continued to falsely inform Plaintiff that there was no risk in taking leave, that she need not worry about the timing of her return to work, then terminating her at what they presumed to be the end of disability leave time granted pursuant to company policy;.

28. That Plaintiff was ultimately terminated as a result of Defendant's failure to accommodate Plaintiff.

29. That Defendant ultimately terminated Plaintiff because of her need to be reasonably accommodated, and her requesting the same.

30. As a direct result of anxiety that came from her termination, i.e. financial problems, etc. Plaintiff's post-concussive syndrome severely declined after her termination, despite that rest is ultimately the best treatment for her particular ailments.

## COUNT I
### -ADA, Failure To Accommodate-

31. Plaintiff re-alleges and incorporates herein paragraphs 1 through 30 as stated above and alleges further:

32. It is unlawful to fail or refuse to make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability, unless the employer shows that the accommodation would impose an undue hardship on the operation of its business. 42 U.S.C. § 12112(b)(5)(A).

33. On or around March 15, 2013, and for all times material thereafter, Plaintiff was a qualified individual with a disability as she was able and willing to perform the essential functions of her job with a reasonable accommodation.

34. On or around March 15, 2013, and on at least three occasions prior to her April 9, 2013 termination, Plaintiff made Defendant aware of her wish both to return to work, as well as her need to be reasonably accommodated in order to do so.

35. At no time did Defendant ever engage Plaintiff (nor upon information and belief did they ever contact her doctors for any clarification or insight)  in any type of interaction for purposes of determining what reasonable accommodation would allow her to return back to her work duties—or whether she could resume them from home, as some similarly situated non disabled employees in the same position as Plaintiff were permitted to do.

36. That as a result, Plaintiff was not granted a reasonable accommodation which would have allowed her to return to work, and Defendant terminated her based on her absences having hurt business.

37. Defendant's failure to engage in an interactive process with Plaintiff, was the proximate cause of Plaintiff's termination.

38. Alternatively, Defendant denied Plaintiff's reasonable accommodation request in willful violation of the Act

39. It is unlawful to deny employment opportunities to a job applicant or employee who is an otherwise qualified individual, if such denial is based on the potential employer's need to make a reasonable accommodation for the employee/applicant. 42 U.S.C. § 12112(b)(5)(B).

40. Upon information and belief, Defendant also denied Plaintiff's entire employment opportunity because they came to regard Plaintiff as disabled and in need of accommodation, and thus, no longer desirable.

41. That Defendant's failure to accommodate Plaintiff was carried out in a willful and wanton manner and while knowing Plaintiff's employment would be lost absent a reasonable accommodation.

**Wherefore**, Plaintiff, by and through her attorney, Ryan Scott Nalley, request that this honorable Court find Defendants liable for failure to accommodate Plaintiff pursuant to the ADA and to award the following relief:

1. All back wages, front wages, and loss of future earnings and potential future earnings;

2. The maximum available amount of compensatory damages pursuant to the ADA and the Civil Rights Act of 1991;

3. The maximum amount of punitive damages available pursuant to the ADA and the Civil Rights Act of 1991;

4. Attorney's fees and costs;

5. Any and all additional damages the Court deems proper.

<u>**COUNT II**</u>
**-ADA, Disparate Treatment-**

42. Plaintiff re-alleges and incorporates herein paragraphs 1 through 41 as stated above and states further;

43. At all times material, Plaintiff was disabled within the meaning of the ADA.

44. At all times material, Plaintiff was qualified for the position she held with Defendant.

45. Plaintiff suffered an adverse employment action in that she was terminated from her position of employment with Defendant on April 9, 2013.

46. Upon information and belief, after Plaintiff was terminated her position was filled.

47. That Plaintiff had specifically asked two members of upper management handling her leave of absence about potential consequences to her employment that taking such a period off might have and both times she was assured that Defendants would her job for her despite whether she was or was not covered under the Family Medical Leave Act, or the Employer's leave policy.

48. However, within 3 days of informing Defendants she was disabled within the meaning of the ADA and wished to return to work with a reasonable accommodation, her email account was disconnected.

49. Within 3 weeks of the above request Plaintiff was terminated without a warning.

50. Based on the statements made by the two upper level officials, a reasonable inference can be drawn that similarly situated non-disabled employees in Plaintiff's position are treated more favorably.

51. That Defendants have treated Plaintiff disparately in violation of the ADA.

**Wherefore**, Plaintiff, by and through her attorney, Ryan Scott Nalley, request that this honorable Court find Defendants liable for disparate treatment pursuant to the ADA and to award the following relief:

1.     All back wages, front wages, and loss of future earnings and potential future earnings;

2.     The maximum available amount of compensatory damages pursuant to the ADA and the Civil Rights Act of 1991;

3.     The maximum amount of punitive damages available pursuant to the ADA and the Civil Rights Act of 1991;

4.     Attorney's fees and costs;

5.     Any and all additional damages the Court deems proper.

JURY TRIAL REQUESTED

Respectfully submitted,

/s/Ryan Scott Nalley

The Law Office of Ryan Scott Nalley
161 North Clark Street
Suite 4700
Chicago, Illinois 60601
312.216.5189
312.523.2001 fax
attorney@ryannalleylaw.com